## Little v. Sebastian

*H. Rank Bickel, Jr.,* for plaintiff.

*James R. Whitman,* and *Lewis, Brubaker, Whitman & Christianson,* for defendant.

GATES, P. J., November 9, 1970.—On July 23, 1970, plaintiff filed a complaint in trespass for damages sustained in an automobile accident.

No answer to the complaint has been filed. However, on August 11, 1970, plaintiff served upon defendant an interrogatory seeking to determine if defendant was insured by any public liability insurance applicable to

the accident set forth in the complaint and, if so, to disclose the name of the insurance company and the limits of the coverage.

On September 8, 1970, defendant filed a motion for a protective order requesting that the interrogatory not be answered, because a policy of insurance held by defendant is a contract which is privileged and not a proper subject of discovery; that any insurance policy held by defendant is without evidentiary or probative value and, therefore, irrelevant to the subject matter; and that the requested information cannot substantially aid plaintiff in the preparation of the pleadings or the trial of the case and, therefore, not the proper subject of discovery.

The matter was thereafter set down for argument, and we now have the benefit of briefs from the parties.

The precise question presented to us is apparently inundating the courts of this Commonwealth, in other States and in the Federal system. We have researched many of these cases, and it would take an apothecary's scale to determine on which side of the issue are the cases most weighty. It would appear that there is a marked numerical preponderance of the States which oppose requiring disclosure of insurance coverage prior to a judgment for plaintiff. However, this is of little help to us, for many of their decisions depend upon court interpretation of their own rules of discovery which differ from the rules in Pennsylvania. Still other States resolve the issue based upon their version of motor vehicle safety responsibility statutes. Unfortunately, in many of the cases, we find that the resolution of the point has been accomplished by overstepping that sometimes fine line between interpreting and legislating.

Here in Pennsylvania, we have found that there is no appellate court ruling on the subject. We have

further found that there are numerous State district court decisions coming to opposite conclusions. President Judge John Q. Stranahan, of Mercer County, in Groce v. Hile, 46 D. & C. 2d 89, recognized the confusion and lack of clear cut logical authority and found himself with a Hobson's choice at hand. He candidly set about to clarify the confusion that exists, at least within the territorial confines of the County of Mercer. In view of the hopeless state of the law on this point, I presume that is precisely what we must do.

We have also examined three Federal decisions for the third circuit in Pennsylvania in three separate districts and find one in favor, one against and one steering a middle course. See McClure v. Boeger, 105 F. Supp. 612; Slomberg v. Pennabaker, 42 F.R.D. 8, and Rosenberger v. Vallejo, 30 F.R.D. 352. But we prefer not to rely too heavily upon these Federal decisions or the reasoning behind them, because they are based upon the Federal rules of discovery which are admittedly broader than the existing discovery rules in the Commonwealth of Pennsylvania.

The situation is intensified where, as in Philadelphia County, two equally competent and eminent jurists, the Hon. Leo Weinrott and the Hon. David L. Ullman, in rather lengthy and learned opinions, come to opposite conclusions. See Cipparone v. Kosloski, 46 D. & C. 2d 628, and Waksman v. Walker, 44 D. & C. 2d 1. To make matters worse, in the same county, we find an exceptionally learned opinion by Judge Maurice W. Sporkin which appears, at least for the present, to break the tie when he decided in Toogood v. Watkins, Jr., 46 D. & C. 2d 365, that insurance limits were not discoverable.

It would be pointless for us to analyze the Pennsylvania cases that have been reported on this point, because they all represent intellectual efforts to

logically solve what is admittedly a perplexing problem. Nor would a detailed analysis of our discovery rules be of much service, because we firmly believe that it is a matter, not of interpretation, but of legislation when a judge concludes from them that discovery of insurance policy limits is encompassed within the rules. We believe that they are plainly beyond the scope of our existing discovery rules.

The common limitation of discovery, as stated in Pa. R. C. P. 4007(a), is to the ascertaining of ". . . any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case." The subject matter of the litigation in this case is not the ability of defendant to pay a verdict, but his liability to pay it and, if liable, in what amount. We are at a total loss to understand how the identity of the insurer and the limits of coverage would be relevant to the question of liability or the extent of the damages in issue. Clearly, the fact of insurance and the amount of coverage would be inadmissible evidence at trial. No reference to insurance may be set forth in any of the pleadings. A defendant with insurance may be just as liable to a plaintiff as a defendant without insurance. A defendant with $10,000 worth of insurance coverage may be just as liable to a plaintiff with a verdict of $100,000 as is a defendant with $300,000 worth of liability insurance coverage. Plainly put, liability insurance, no more than the total financial worth of defendant, is irrelevant in a negligence suit.

An argument frequently employed by judges who conclude that coverage is discoverable is that it will contribute to the reduction of court congestion by promoting settlements prior to trial. We are unimpressed by this argument, because there is a contrary

thought as well. We have in mind the natural and human temptation that would confront a plaintiff who knew that the policy limits were high, for he would have a tendency to evaluate his claim based upon the amount of insurance available, rather than upon a reasonable and careful analysis of his actual damages and compensable loss. This we believe will contribute to court congestion rather than reduce it.

Another argument frequently urged by those who would allow discovery in this area is that it would have the tendency to encourage counsel to spend more time and money in the preparation of his case if he knew that there was an ample insurance fund awaiting a successful verdict. We also reject this argument, not only because it lacks logic, but it demeans the legal profession. The argument begs the conclusion that the courts would sanction a poorly prepared case by an attorney, merely because the insurance coverage limits are low. At all times, we expect counsel for plaintiff, and defendant as well, to put forth his very best effort in the preparation and trial of a case in these courts, and we will never sanction the sloppy professional handling of a case merely because there is not much money involved.

Still another argument urged by those who favor discovery is that liability insurance is a different breed of asset than any other assets a defendant may have, because its purpose is to protect plaintiffs who have been injured by the negligence of defendant. But is it not equally true that the purpose in purchasing liability insurance is to protect defendants and policyholders by providing a fund out of which an award can be paid without losing the other assets of that individual? Almost all of the courts that have considered this argument have recognized that the other financial assets of a defendant are privileged and not

the subject of disclosure but rationalize that insurance policies are different. We find the difference to be one without a meaningful distinction.

We believe that the objects of a proper discovery procedure are to first, narrow the issues; second, obtain evidence to be used at the trial of the issue; third, secure information as to the existence and source of evidence that may be used at the trial; and, fourth, to obtain the necessary information to prepare proper pleadings.

None of these purposes includes the promotion of settlements or the relief of court congestion. None of them include as a purpose the encouragement of counsel to spend more time and money in cases where there is the likelihood of a greater recovery. Nowhere in the rules is this type of discovery explicitly stated. To read the requirement into the discovery rules would be legislating and not interpreting. Judges should never legislate or conjure up public policy. There was recently introduced into the Pennsylvania State House of Representatives a bill* that would have commanded disclosure of liability insurance in bodily injury or death suits. The bill was voted down by a two-to-one majority. See Cipparone v. Kosloski, 46 D. & C. 2d 628, at page 632. Apparently, the proper legislative body in this Commonwealth has reflected the public policy of our people and concluded that there is more evil than good involved in this type of discovery. It matters little whether we agree or disagree with this conclusion, because we recognize that it is a legislative function and not a judicial one.

Thus, we conclude that unless and until the General Assembly acts otherwise or our appellate courts dis-

---

* H. B. 1665 was defeated November 14, 1967, reconsidered November 15, 1967, and passed by a narrow majority. The bill died in the Senate.

agree with our thinking and decide otherwise, no such discovery will be permitted in the County of Lebanon.

ORDER

And now, to wit, November 9, 1970, defendant's motion for a protective order is granted.